# IN THE COURT OF APPEALS OF IOWA

No. 16-0794
Filed August 17, 2016

**IN THE INTEREST OF J.S.-G.,**
**Minor child,**

**R.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Gary K. Anderson, District Associate Judge.

A mother appeals the juvenile court's modification order removing her child from her care and placing the child with the father. **REVERSED AND REMANDED.**

Te'ya T. O'Bannon-Martens of O'Bannon Law, P.C., Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Roberta J. Megel of the State Public Defender's Office, Council Bluffs, for minor child.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals the juvenile court's modification order removing her child from her care and placing the child with the father. She argues no clear and convincing evidence existed to support the juvenile court's decision—a decision contrary to the recommendations of both the Iowa Department of Human Services (DHS) and the child's guardian ad litem—because there was not clear and convincing evidence suggesting the child was at risk of harm that could be avoided only through a change of placement. Furthermore, the mother argues the evidence presented to the juvenile court did not support the conclusion that placing the child with the father was in the child's best interests. We hold the juvenile court did not have clear and convincing evidence to justify the modification placing the child with the father. We therefore reverse the juvenile court's modification order and remand for further proceedings.

## I. Background Facts and Proceedings

In November 2014, DHS received information the mother had committed an assault in the presence of her two-year-old son, J.S.-G. The reported victim of the assault was the child's maternal grandmother. A child abuse assessment completed by DHS confirmed the assault and also revealed the mother was using methamphetamine. When DHS became involved, J.S.-G was living with, and being cared for by, the maternal grandmother. She had taken primary responsibility for the care of J.S.-G., and she reported the mother's contact with the child was intermittent.

On November 14, 2014, the juvenile court found clear and convincing evidence to justify J.S.-G.'s removal from the care of his mother and placed the

child with his maternal uncle and aunt. In addition to its inclusion of the DHS findings regarding the mother, the juvenile court noted several issues regarding the father—he lived in Nebraska, had recently been arrested on drug charges and for operating while intoxicated, and had not seen J.S.-G. since May of 2014.

Following an adjudicatory hearing, J.S.-G. was adjudicated to be a child in need of assistance (CINA) on January 26, 2015, pursuant to Iowa Code section 232.2(6)(c)(2) and (6)(n) (2013). The juvenile court ordered that the child remain with his maternal uncle and aunt. The court also ordered both the mother and the father to complete substance abuse evaluations and follow all resulting recommendations for treatment.

Following the CINA adjudication, the mother sought substance abuse treatment at an inpatient program at Family Works. In a February 10, 2015 dispositional order, the juvenile court noted the mother's active participation and high level of engagement in the program. At the time, J.S.-G. had already been participating in overnight and weekend visits with his mother at Family Works with good results. The juvenile court ordered that the child be placed with the mother at Family Works, subject to DHS supervision. That placement was continued in a May 1, 2015 review order. The juvenile court noted the mother continued to make progress in the program, J.S.-G. was acclimating well to the placement, and all of the child's needs were being met.

The mother graduated from Family Works in June 2015, and she moved with J.S.-G. into the maternal grandmother's home. By August 2015, however, the mother began to miss her outpatient treatment appointments. She admitted to relapsing and using methamphetamine twice. The mother was referred to a

thirty-day treatment program at Prelude in Des Moines, where she was admitted on October 6, 2015. She was discharged from that program when she left the facility in order to attend an October 19, 2015 CINA review hearing. As a result of the mother's relapse and discharge from the Prelude program, the juvenile court placed J.S.-G. in the care of the maternal grandmother in its October 26, 2015 order. The mother was allowed to live in the same home with the child while she obtained further treatment.

The mother then entered intensive outpatient treatment with Heartland Family Service but was unsuccessfully discharged soon afterward due to a lack of participation and noncompliance with drug screens. Despite this third setback, the juvenile court ordered that J.S.-G. remain with the maternal grandmother in its January 14, 2016 review order.

On March 14, 2016, the mother was admitted into the inpatient women and children's facility at the Jackson Recovery Center in Sioux City. DHS placed J.S.-G. with the mother later the same month without a formal order from the juvenile court. When the case came up for a review hearing on April 27, 2015, both the State and the child's guardian ad litem recommended the court order that the child remain with his mother in the program. No testimony was presented by the mother, the State, or the guardian ad litem. The State summarized its recommendation as follows:

> The mother's done very well in her treatment program. The child has been with her on a visit for approximately thirty days, and everything is going well up there in the program, so the recommendation from DHS is that she—the child continue to be placed with the mother.

Those sentiments were echoed by the recommendation from J.S.-G.'s guardian ad litem:

> Your Honor, no evidence or testimony. If this hearing was twenty days ago, I might have a different recommendation, but at this point in time, I am in agreement with the recommendation that [the child] stay with his mother at Jackson Recovery, and I would ask that the parties be granted concurrent jurisdiction to settle matters of custody and support . . . .
> No additional services are being requested.

The mother's attorney also informed the court of her accomplishments

> As stated by [the State], [the mother] is doing extremely well right now. She's been in Jackson Recovery for—I believe it's forty-six days, and she is already I believe they call it a senior mentor. She's doing extremely well in the program.
> [J.S.-G.] is doing extremely well with her, and all reports coming out of Jackson [Recovery] right now are glowingly positive on both of them, so we would be in agreement with the recommendations as they are set forth right now.
> We would resist the recommendation of concurrent jurisdiction as my client would like to have the opportunity to complete her treatment and continue following through with the recommendations of the court.

The father was present and testified at the hearing. He also presented testimony from the child's paternal grandmother. The father and paternal grandmother asked that J.S.-G. be placed with the father in Nebraska. They testified to their belief that J.S.-G.'s placement with the mother in a treatment program was negatively affecting the child's behavior and development. However, the father was confronted on cross-examination with documents from a daycare facility showing J.S.-G. was on track developmentally.

At the conclusion of the testimony of the father and paternal grandmother, the juvenile court made the following oral ruling:

> This is always a difficult situation. The court would note that there's no specific order from this court placing [the child] with [the

mother] in Jackson Recovery and that [DHS] did that. The last order from this court was that [the child is] placed in the custody of his maternal grandmother.

Certainly, [the mother]'s progress at Jackson Recovery is—is—the court's pleased by that, but she does have a history of not completing those treatments, and at this point [the father] has a job. He has a place to live. He's doing well on probation. It's not this court's intention nor will the court interfere or add to his adult probation and requirements in the state of Nebraska. I don't have the power to do that nor do I think—I think they're addressing those issues satisfactorily to my way of thinking. Certainly, his list of [Alcoholics Anonymous] meetings is impressive. The [urinalysis tests] indicate that he's not using.

I understand [DHS]'s requirements and the [Iowa] Code requires that [DHS] return the child to the person the child was taken from.

There apparently is no current—there's no custody order.

The court feels that at this particular time, it's more important for the child to be with the parent who is not in some kind of facility. Certainly, I understand that—that [the mother]'s doing well in Jackson Recovery, and I'd certainly commend that, but I think at this point the recommendation of concurrent jurisdiction is appropriate.

I think at this point the court feels that the most appropriate placement for the child is with his father. The home study has been approved, and I understand that we're moving [the child] again, but at a certain point that's just the way it is.

The court's going to order that the care, custody, and control of the minor child be placed with his father subject to the Iowa Department of Human Services. The court's going to adopt the other recommendations from [DHS]. The court's not going to add— the court's going to grant the parents concurrent jurisdiction for child support and child custody through district court. The court—

At this point it would appear that even when [the mother] is discharged from Jackson Recovery, she may have another halfway house to go to. She does not have any employment or any housing on her own.

The juvenile court issued a written order on April 28, 2015.

The mother appeals.

## II. Standard of Review

Our review of CINA proceedings is de novo. *In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008). "In reviewing the proceedings, we are not bound by the juvenile

court's fact findings; however, we do give them weight." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "Our primary concern is the [child]'s best interests." *Id.* CINA determinations must be based upon clear and convincing evidence. Iowa Code § 232.96(2) (2015). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

### III. Discussion

The mother argues the juvenile court improperly modified its prior dispositional and review orders to place custody of J.S.-G. with the father. Her argument is twofold. First, she argues the juvenile court did not have clear and convincing evidence that the child was at risk of harm that could be avoided only through a change of placement. Second, she argues the juvenile court did not have clear and convincing evidence the best interests of J.S.-G. would be furthered by transferring placement of the child to the father. Because DHS had recommended to the juvenile court that J.S.-G. should be placed with the mother, the State has filed no brief in opposition to the mother's position.

A transfer of custody requires a finding by the juvenile court, by clear and convincing evidence, that "(1) the child cannot be protected from physical abuse without transfer of custody; or (2) the child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." Iowa Code § 232.102(5)(a). Furthermore, the juvenile court "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made." *Id.* § 232.102(5)(b).

Iowa Code section 232.103 was amended in 2004 by an act "expanding the circumstances by which the juvenile court may modify, vacate and substitute, or terminate a child in need of assistance dispositional order." 2004 Iowa Acts ch. 1154, §§ 1, 2. Following the 2004 amendment, subsection (4) now provides:

> The [juvenile] court may modify a dispositional order . . . if the court finds that any of the following circumstances exist:
> (a) The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> (b) The purposes of the order cannot reasonably be accomplished.
> (c) The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
> (d) The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

In addition to these statutory requirements, our supreme court stated in 1991 that "[a] modification of custody or placement requires a material and substantial change in circumstances." *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991).[1]

We find the juvenile court did not have the evidentiary support necessary to justify its modification of disposition and transfer of custody of J.S.-G. to the father. Although it is true that the juvenile court engaged in a recitation of the necessary statutory findings under section 232.102(5), those findings are not supported by the record.

In its April 28, 2016 order modifying placement, the juvenile court stated:

---

[1] At least two panels of our court noted in previous cases that the final requirement of a material and substantial change in circumstances may no longer be necessary since the 2004 changes to Iowa Code section 232.103(4). *In re M.M.,* No. 16-0548, 2016 WL _____, at *9 (Iowa Ct. App. July 27, 2016); *In re V.B.*, No. 14-0315, 2014 WL 2600318, at *4 n.3 (Iowa Ct. App. June 11, 2014).

The court finds there is clear and convincing evidence that unless there is a transfer of custody, the child could not be protected from some harm that would justify the adjudication of the child as a child in need of assistance. Removal from the family home is the result of a determination that continuation therein would be contrary to the welfare of the child and reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home.

The court finds that reasonable efforts were made to avoid the necessity of continued out-of-home placement and that return of the child to a parental home would be contrary to the well-being of the child.

On our de novo review, we find the record does not reveal any indication that a transfer of custody was necessary to protect J.S.-G. from physical abuse at the hands of the mother or any other person. Nor does the record contain reference to a need to protect J.S.-G. from any specific, articulable harm that would befall the child without a transfer of custody. Section 232.102(5)(a) requires that one of those two circumstances be established by clear and convincing evidence to justify a transfer of custody.

Furthermore, on our de novo review, we do not find the evidence before the juvenile court supports the conclusion that continuing J.S.-G.'s existing placement was contrary to the child's best interests as required by section 232.102(5)(b). Both DHS and the child's guardian ad litem recommended he remain with the mother at the Jackson Recovery Center. The father and paternal grandmother's objections notwithstanding, there was no concrete evidence suggesting J.S.-G. had suffered any negative effects from the existing placement or that placement with the father would be a better option. The father has been on probation since the outset of this case. The state of Nebraska conducted a home study in the spring of 2015 but denied placement of J.S.-G. with the father

because the father was facing a felony strangulation charge stemming from an April 2015 incident involving his girlfriend. The father had to complete anger management classes as a result of the charge. Finally, like the mother, the father also has a reported history of substance abuse that included both methamphetamine and alcohol, though the court noted he had engaged in treatment with Lutheran Family Services and attended Alcoholics Anonymous meetings to address the issue. J.S.-G. has not lived with the father since August 2013.

Finally, we note the juvenile court's reference to the fact it had last ordered that J.S.-G. remain placed in the care, custody, and control of the maternal grandmother. Although the juvenile court noted no party was recommending that J.S.-G. remain placed there, it did not explain why, if the court did not believe placement with the mother at the inpatient treatment program was in the child's best interests, it did not maintain the status quo by again ordering J.S.-G. remain placed with the maternal grandmother. In the absence of the clear and convincing evidence required by Iowa Code section 232.102(5)(a) and (b), the juvenile court should have continued the existing placement of J.S.-G.

For these reasons, we reverse the juvenile court's April 28, 2016 order modifying placement of J.S.-G. and remand this case for further proceedings.

**REVERSED AND REMANDED.**